UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOM N.[1],

        Plaintiff,

                      Civil Action No. 24-12629

v.

                      David R. Grand
                      United States Magistrate Judge[2]

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER ON CROSS-MOTIONS**
**FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

Plaintiff Tom N. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions. (ECF Nos. 12, 14).

For the reasons set forth below, the Court finds that the ALJ's conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence. Thus, the Commissioner's Motion for Summary Judgment **(ECF No. 14)** will be **DENIED**; the Plaintiff's Motion for Summary Judgment **(ECF No. 12)** will be **GRANTED**; and this case

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 6).

will be **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

### A. Background

Plaintiff was 51 years old at the time of his alleged onset date of February 8, 2020.[3] (PageID.113).[4] He completed high school, taking some special education classes, but had no further education. (PageID.293). He worked as a general laborer, but he stopped working in May of 2019 because of his medical conditions. (PageID.292-93, 324). He now alleges disability primarily as a result of chronic back and neck pain, radiculopathy, anxiety, and depression. (PageID.113).

After Plaintiff's applications for DIB and SSI were denied at the initial level on July 26, 2021 (PageID.161-64, 171-74), and on reconsideration on July 12, 2022 (PageID.187-90, 197-98), he timely requested an administrative hearing, which was held on September 21, 2023, before ALJ Kevin Fallis (PageID.71-110). Plaintiff, who was represented by attorney Frank Cusmano, testified at the hearing, as did vocational expert Roxane Minkus. (*Id.*). On November 8, 2023, the ALJ issued a partially favorable decision, finding that Plaintiff was not disabled under the Act between February 8, 2020, and July 3, 2023, but that he became disabled on July 4, 2023 – the date on which his age category changed –

---

[3] Although Plaintiff alleges disability beginning on March 21, 2019, he filed prior DIB and SSI applications that were denied at the initial level on February 7, 2020. (ECF No. 8, PageID.113). Because the ALJ found no basis for reopening these prior applications – a conclusion Plaintiff does not challenge – the earliest possible onset date of disability is the day after the prior determination, which is February 8, 2020. (*Id.*, PageID.43).

[4] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 8.

and was disabled through the date of the decision. (PageID.43-63). On August 9, 2024, the Appeals Council denied review. (PageID.26-30). Plaintiff timely filed for judicial review of the final decision on October 4, 2024. (ECF No. 1).

  **B.** **The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

3

> claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff only became disabled under the Act as of July 4, 2023, when his age category changed under the medical-vocational rules. (PageID.43-63). At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 8, 2020, the earliest possible onset date. (PageID.46). At Step Two, the ALJ found that, since that date, Plaintiff has had the following severe impairments: degenerative disc disease of the lumbar, thoracic, and cervical spine, dislocation of vertebrae, scoliosis, osteoarthritis, radiculopathy, chronic kidney disease, developmental disorder of scholastic skills, adjustment disorder, and depression. (*Id.*). At Step Three, the ALJ found that, since February 8, 2020, Plaintiff's impairments, whether considered alone or in combination, have not met or medically equaled a listed impairment. (PageID.46-47).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that, since February 8, 2020, he has been capable of performing light work, with the following additional limitations: could never climb ladders, ropes, or scaffolds; could

occasionally climb ramps or stairs, stoop, kneel, crouch, crawl, and balance; could occasionally reach overhead; could frequently handle and finger with the nondominant left upper extremity; must avoid concentrated use of hazardous moving machinery; must avoid all exposure to unprotected heights; and is limited to simple, routine, repetitive tasks performed in a work environment free of fast paced production requirements, such as assembly line work, involving only simple work related decisions and routine workplace changes that do not require significant academic skills. (PageID.51).

At Step Four, the ALJ found that, since February 8, 2020, Plaintiff has been unable to perform any of his past relevant work. (PageID.60). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that prior to July 4, 2023, Plaintiff was capable of performing the light jobs of cashier II (330,000 jobs in the national economy), bar attendant (131,000 jobs), and housekeeping cleaner (138,000 jobs). (PageID.61-62). As a result, the ALJ concluded that Plaintiff was not disabled under the Act prior to July 4, 2023. (PageID.62).

The ALJ also found that beginning on July 4, 2023, the date Plaintiff's age category changed, and no jobs existed in significant numbers in the national economy that he could perform. (*Id.*). Thus, the ALJ found that "[b]eginning on the date the claimant's age category changed, considering the claimant's age, education, and work experience, a finding of 'disabled' is reached by direct application of Medical-Vocational Rule 202.06." (*Id.*). Accordingly, the ALJ concluded that Plaintiff was not disabled prior to July 4, 2023, but became disabled on that date and continued to be disabled through the date of the decision. (*Id.*).

5

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.  Analysis**

Before this Court, Plaintiff makes only one argument – namely, that the ALJ erred in evaluating the medical opinion of consultative examiner Harold Nims, D.O. (ECF No. 12, PageID.1734-40). For the reasons set forth below, the Court agrees.

*1.  Plaintiff's Medical Treatment*

Before the Court considers the ALJ's evaluation of Dr. Nims' opinion, a discussion of the other relevant medical evidence of record is warranted. On May 21, 2019, Plaintiff was injured in a motor vehicle accident. A CT scan of his cervical spine showed no acute fracture or dislocation but moderate to severe endplate and facet degenerative changes. (PageID.1128). On July 11, 2019, Plaintiff underwent an MRI of the cervical spine, which showed straightening of the normal cervical lordosis with moderate Type II endplate changes at C6-C7 and C7-T1; broad-based disc protrusion at C7-T1 with severe left and moderate severe right foraminal with effacement of the bilateral C8 nerve roots (left greater than right); disc bulge at C3-C4 through C6-C7, with effacement of the ventral epidural

7

space with multilevel foraminal stenosis with effacement of the left C5, right C6, and bilateral C7 nerve roots.  (PageID.1198-99).  An MRI of Plaintiff's lumbar spine taken the same day showed disc protrusion at L4-L5 effacing the ventral epidural space with mild to moderate foraminal stenosis but no evidence of nerve root impingement; disc bulge at L3-L4 and L5-S1 effacing the ventral epidural space but no central canal stenosis, and a right paracentral annular tear at L5-S1.  (PageID.1200-01).

On March 31, 2020, Plaintiff established care with Jawad Shah, M.D. at Insight Institute of Neurosurgery and Neuroscience.  (PageID.996-98).  Plaintiff complained of bilateral neck and low back pain following the motor vehicle accident.  (PageID.996).  He reported numbness and weakness in his left arm and back and admitted having trouble controlling his bladder.  (*Id.*).  Dr. Shah noted that Plaintiff's lumbar pain had "gotten better" with conservative measures, but his cervical pain was becoming worse.  (PageID.997).  A new MRI of Plaintiff's cervical spine was ordered, which showed disc bulges from C3-C4 down to C7-T1 with moderate to severe foraminal stenosis at various levels.  (PageID.1000, 1058-60).  At a follow-up visit on April 7, 2020, Dr. Shah indicated that surgery was warranted, given Plaintiff's pain and motor weakness.  (PageID.1000).  Thus, on April 14, 2020, Plaintiff underwent an anterior cervical discectomy and fusion at C6-C7 and C7-T1 with an interbody cage and standalone devices.  (PageID.1072-74).

Plaintiff continued to treat with Dr. Shah, as well as Julie Widzinski, ACNP, at Insight Institute throughout 2020, 2021, and 2022, generally reporting improvement with his left arm symptoms following surgery.  (PageID.965-69, 1012-13).  On January 13, 2021, however, Plaintiff complained of "low back pain" and radiating pain into his left and

right hip, buttocks, and right knee, which he had been experiencing for approximately one month. (PageID.1040-42). A new lumbar spine MRI was ordered. (*Id.*). At his next visit, on February 11, 2021, ACNP Widzinski noted that Plaintiff had "continued left leg weakness," for which he "request[ed] a cane[.]" (PageID.1044). This was apparently provided. On March 11, 2021, Plaintiff's lumbar spine MRI was reviewed, and it showed multilevel thoracic spondylosis, most advanced at T2-T3, T5-T6, and T6-T7, where there was "disc protrusion which contacts … the ventral cord." (PageID.1178). An epidural steroid injection at T6 was recommended, but Plaintiff wanted to think about it. (*Id.*). At monthly visits between April and October 2021, Plaintiff continued to report low back pain, but he continued to decline injections and remained relatively stable on his current medication regimen. (PageID.1163-76).

Throughout 2022 and 2023, Plaintiff continued to treat with various providers at Insight Institute. On January 6, 2022, Plaintiff saw Dr. Shah, reporting "significant symptoms of pain in his back radiating down his left leg" that was "quite debilitating." (PageID.1613). Dr. Shah noted that Plaintiff had tried injections in the past, which had worked for him temporarily, but he did not want to do that again, so aqua therapy was prescribed instead. (*Id.*). On April 7, 2022, Plaintiff returned to Dr. Shah, continuing to report pain down his left leg. (PageID.1663). Dr. Shah noted that Plaintiff had disc herniations at L4-L5 and L5-S1, which he believed were symptomatic. (*Id.*). Dr. Shah indicated that continued conservative treatment (which Plaintiff opted for) was a reasonable approach, with surgery "as a last resort." (*Id.*). On May 7, 2022, Plaintiff denied any numbness or tingling in the bilateral legs and reported that the aqua therapy was

9

helping his low back pain. (PageID.1644). Throughout most of 2022, Plaintiff remained relatively stable, although his Lyrica dose was increased twice in an effort to address his ongoing pain. (*E.g.*, PageID.1632 ("stable on his current medication regimen" in June 2022), 1703 (not interested in steroid injections, as they had not provided sustained relief in the past; proceeding with medication management in August 2022), 1699 (Lyrica dose increased from 50 mg to 75 mg twice a day in September 2022); 1695 (Lyrica dose increased from 75 mg to 100 mg twice a day in October 2022)).

On December 9, 2022, Plaintiff was involved in another motor vehicle accident, causing increased back pain. (PageID.1444). When Plaintiff returned to Insight Institute on December 22, 2022, he reported worsening back pain since the accident, and an updated MRI of the lumbar spine was ordered. (PageID.1691). That showed diffuse disc bulges with endplate spurring and ligamentum flavum thickening at L4-L5 and L5-S1; a diffuse disc bulge with endplate spurring at L5-S1; and facet arthropathy throughout the lumbar spine. (PageID.1688). An MRI of Plaintiff's cervical spine performed on February 6, 2023, showed minimal anterolisthesis at C3-C4 and C5-C6; uncovertebral joint spurring and facet arthropathy; and severe neural foraminal narrowing on the left at C4-C5 and on the right at C5-C6, but no significant spinal canal stenosis. (PageID.1685). Plaintiff was not interested in steroid injections to help with his neck pain, although he was scheduled for a left SI joint injection to help with his back pain. (*Id.*). On March 9, 2023, a second SI joint injection was recommended, and a possible left SI radiofrequency ablation was discussed, but Plaintiff wanted to think about both options. (PageID.1218). Subsequently, Plaintiff was scheduled for a series of three left SI joint injections in May and June 2023.

(PageID.1440, 1675).

### 2. Dr. Nims' Examination and Opinion

On May 12, 2022, Plaintiff underwent a consultative physical examination with Harold Nims, D.O. (PageID.1181-90). Plaintiff reported ongoing low back pain but denied significant neck pain. (PageID.1181). He indicated he could "walk approximately 10 minutes with the use of a single-prong cane that was prescribed in 2019." (*Id.*). Plaintiff further reported using the cane "all day for walking and sometimes for standing." (*Id.*).

On examination, Plaintiff's gait was mildly antalgic to the right, and he was using a single-prong cane. (PageID.1183). He had mild weakness in the left upper extremity, some mild limitation in the left shoulder motion, and was unable to lift his left arm over his head. (*Id.*). In the lower extremities, Plaintiff had mild weakness throughout the left leg, mild limitation in the left knee and left hip motion, and positive straight leg raising in the lower extremity at 45 degrees in the sitting and supine positions. (PageID.1184). Dr. Nims also observed significant limitation in motion and significant tenderness to palpation of the lumbar spine. (*Id.*). Range of motion testing of the lumbar spine revealed: forward flexion up to 50 degrees (normal 90 degrees); extension up to 10 degrees (normal 25 degrees); and lateral flexion up to 10 degrees bilaterally (normal 25 degrees). (PageID.1186). Plaintiff was unable to walk on his toes and heels or perform tandem gait and could squat and bend halfway. (PageID.1184). Dr. Nims found that Plaintiff's "effort on exam" was "good." (PageID.1188).

In relevant part, Dr. Nims assessed Plaintiff with chronic low back pain with radiculopathy in the left lower extremity and a history of cervical spine fusion with good

11

results. (PageID.1185). Dr. Nims opined that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling as well as pushing and pulling heavy objects is moderately impaired …." (*Id.*). He also opined that a single-pronged cane was "necessary" for ambulation. (PageID.1188, 1190).

### 3. The ALJ Erred in Evaluating Dr. Nims' Opinion

Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions – the two "most important" factors – in their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "The regulations require that the ALJ sufficiently articulate his reasoning for his persuasiveness findings." *Mistie W. v. Comm'r of Soc. Sec.*, No. 23-10696, 2024 WL 992160, at *3 (E.D. Mich. Mar. 7, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 902 (E.D. Mich. 2021)).

As set forth above, the ALJ considered the evidence of record and found that, between February 8, 2020, and July 3, 2023, Plaintiff had the RFC to perform light work,

12

with certain additional limitations. (PageID.51). In reaching this conclusion, the ALJ thoroughly discussed Dr. Nims' examination findings and then concluded that, while he considered those examination findings to the extent they were consistent with the record as a whole, he found:

> … [Dr. Nims'] opinion indicating that [Plaintiff] is 'moderately impaired' to be unpersuasive, as it is vague as to the specific limitations suggested. Dr. Nims' opinion that a single prong cane is necessary is unpersuasive, because although the record reflects use of a cane at times, the record reflects that the cane was prescribed at [Plaintiff's] request, yet there were no findings of a medical need for the use of a cane by [Plaintiff's] medical providers, and prior findings had reflected that [Plaintiff] exhibited no balance problems.

(PageID.58) (internal citations omitted).

Plaintiff now argues that the ALJ erred in finding unpersuasive Dr. Nims' opinion that he requires a single prong cane.[5] (ECF No. 12, PageID.1738-40). Plaintiff argues that, in reaching this conclusion, the ALJ "relied on a selective reading of the record," pointing out that ACNP Widzinski specifically referenced the "continued left leg weakness" for which Plaintiff requested a cane. (ECF No. 12, PageID.1739) (quoting PageID.1044). While the Court would frame the issue somewhat differently than Plaintiff, in general, it agrees that the ALJ's handling of Dr. Nims' opinion in this regard is flawed in multiple respects and, ultimately, not supported by substantial evidence.

---

[5] Plaintiff also argues that the ALJ erred in rejecting as "vague" Dr. Nims' opinion that Plaintiff was "moderately limited" in the ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing and pulling heavy objects. (ECF No. 12, PageID.1735-38). Because the Court is remanding on other grounds, it need not address in detail the merits of this argument. However, on remand, the ALJ should give this argument due consideration.

13

First, the Court agrees with Plaintiff that, although a cane might have been prescribed by ACNP Widzinski at Plaintiff's request, ACNP Widzinski gave no indication that she believed a cane was *unnecessary*, as she presumably would have done if that were the case. Moreover, the ALJ appears to have inferred that ACNP Widzinski approved of the cane only *because* Plaintiff requested it, without considering Plaintiff's severe medical condition around that same time. *See supra* at 8-9. This included the symptoms he was experiencing (including low back pain and pain radiating into his left and right hips, buttocks, and right knee), which led to a lumbar MRI being performed just a few weeks later (on March 11, 2021) that showed multilevel thoracic spondylosis, most advanced at T2-T3, T5-T6, and T6-T7, where there was "disc protrusion which contacts … the ventral cord." (PageID.1040-44, 1178).

Plaintiff also argues that "the ALJ's statement that 'prior findings had reflected that [Plaintiff] exhibited no balance problems' is not supported by the record." (ECF No. 12, PageID.1739) (quoting PageID.58). While the ALJ did cite three occasions on which Plaintiff's medical providers observed no balance problems on examination (Page ID.58) (citing PageID.1311, 1317, 1380), those observations were made in July of 2019, December of 2019, and January of 2020. Thus, all of the evidence cited by the ALJ in support of his conclusion that Plaintiff "exhibited no balance problems" predates the alleged disability onset date.[6]

---

[6] Plaintiff also points out that the ALJ rejected the opinion of state agency medical consultant Robin Mika, D.O. that Plaintiff could frequently balance, limiting Plaintiff instead to only occasional balancing. (ECF No. 12, PageID.1739-40) (citing PageID.136-37, 149-50). According

Finally, and most importantly, in finding unpersuasive Dr. Nims' opinion that Plaintiff required a single point cane, the ALJ did not give sufficient consideration or weight to the supportability of Dr. Nims' opinion in this respect. As to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "In practice, the supportability factor concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *David C. v. Comm'r of Soc. Sec.*, No. 22-11292, 2023 WL 7345294, at *2 (E.D. Mich. Nov. 7, 2023) (internal quotation marks omitted). Courts have recognized the importance of discussing the supportability factor in evaluating a medical opinion. *See id.* at *4 ("Even if the Court found that the ALJ adequately discussed the consistency factor, the ALJ still erred by failing to explain how she considered the supportability factor for [the consultative examiner's] opinion."); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *7 (E.D. Wash. Apr. 9, 2025) (ALJ must consider both consistency and supportability factors; "[i]t is not enough that the ALJ considered one of the factors, no matter how thorough or detailed that explanation might be, if the second factor is ignored"); *Judith F. v. Comm'r of Soc. Sec.*, No. 21-10712, 2024 WL 994683, at *9 (E.D. Mich. Feb. 13, 2024) (where the ALJ "did not explain in detail how he applied the factors of supportability and consistency" he "leaves the Court guessing as to what evidence he

---

to Plaintiff, then, "[c]learly the ALJ believed [Plaintiff] had issues with balancing." (ECF No. 15, PageID.1764).

15

considered ….").

Here, while the ALJ did discuss Dr. Nims' examination findings in detail (PageID.57-58), he failed to provide an accurate and logical bridge between this medical evidence and his decision to reject Dr. Nims' opinion that Plaintiff required a single prong cane. Indeed, this portion of the ALJ's decision failed to analyze whether Dr. Nims' own extensive examination and testing supported his opinion that Plaintiff needed a cane. (PageID.58). Instead, it focused only on the two flawed reasons discussed above, *see supra* at 13-14 noted above, that (1) ACNP Widzinski prescribed a cane only because Plaintiff requested one, and (2) Plaintiff had not exhibited balance problems. (PageID.58). Remand is required because, had the ALJ performed the missing analysis, he may well have concluded that, based on his own examination and testing (as well as the other record evidence discussed herein), Dr. Nims' opinion about a cane being "necessary" for Plaintiff's ambulation was adequately supported.

For example, on examination by Dr. Nims, Plaintiff's gait was mildly antalgic to the right. (PageID.1183). He had mild weakness throughout the left leg, as well as positive straight leg raising in the lower extremity at 45 degrees in the sitting and supine positions. (PageID.1184). Dr. Nims also observed significant limitation in motion and significant tenderness to palpation of the lumbar spine. (*Id.*). Range of motion testing of the lumbar spine revealed: forward flexion up to 50 degrees (normal 90 degrees); extension up to 10 degrees (normal 25 degrees); and lateral flexion up to 10 degrees bilaterally (normal 25 degrees). (PageID.1186). Plaintiff was unable to walk on his toes and heels or perform tandem gait and could squat and bend halfway. (PageID.1184). In light of these findings,

16

Dr. Nims specifically opined that Plaintiff's ability to walk was "moderately impaired …." (PageID.1185). All of these examination findings appear to support Dr. Nims' opinion that a single-pronged cane was necessary for ambulation (PageID.1188, 1190), yet the ALJ provided no discussion of this supportability in concluding that Dr. Nims' opinion was "unpersuasive." (PageID.58). Because the ALJ's decision fails to provide an accurate and logical bridge between Dr. Nims' examination findings and his opinion regarding this significant issue,[7] it is not supported by substantial evidence. *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017). As such, remand is required.[8]

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Commissioner's Motion for Summary Judgment **(ECF No. 14)**; **GRANTS** the Plaintiff's Motion for Summary

---

[7] The VE testified that an individual with Plaintiff's RFC who was required to use an assistive device could not perform the jobs of cashier II, bar attendant, or housekeeping cleaner. (PageID.107-08). Thus, it cannot be said that the ALJ's error was harmless.

[8] In arguing that the ALJ properly concluded that Plaintiff did not require a single prong cane, the Commissioner cites to Social Security Ruling ("SSR") 96-9p. (ECF No. 14, PageID.1755-56). This Ruling provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *SSR 96-9p*, 1996 WL 374185, at *7 (July 2, 1996). While it might be true that ACNP Widzinski's medical report fails to satisfy the requirements of SSR 96-9p, as she merely indicated that Plaintiff requested the cane due to left leg weakness and did not describe the circumstances under which it was needed (PageID.1044), the ALJ made no mention of SSR 96-9p, and it is improper for the Court to accept such *post hoc* rationalization by the Commissioner. *See Emery L. D. v. Comm'r of Soc. Sec.*, No. 24-10713, 2025 WL 976685, at *6 (E.D. Mich. Mar. 14, 2025) (citing cases). Moreover, Dr. Nims' opinion relates specifically to Plaintiff's "ability to walk without" an assistive device, and he found that a "single prong cane" was "necessary" for that function. (PageID.1188, 1190).

17

Judgment **(ECF No. 12)**; and, pursuant to sentence four of 42 U.S.C. § 405(g), **REMANDS** this case to the ALJ for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

Dated: December 10, 2025  　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 10, 2025.

　　　　　　　　　　　　　　　　　　　　　s/Eddrey O. Butts
　　　　　　　　　　　　　　　　　　　　　EDDREY O. BUTTS
　　　　　　　　　　　　　　　　　　　　　Case Manager